B 27 (Official Form 27) (12/13)

# UNITED STATES BANKRUPTCY COURT
## Northern District of Georgia

In re  Susanne Hendrickson
        Debtor

Case No.  14-68480  MHM
Chapter  7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name:  CAVALRY SPV I, LLC,ASSIGNEE OF CAPITAL ONE - HELZBERG

2. Amount of the debt subject to this reaffirmation agreement:
   $ __1,371.74__ on the date of bankruptcy   $ __1,371.74__ to be paid under reaffirmation agreement

3. Annual percentage rate of interest:  _____% prior to bankruptcy
   __0.0__% under reaffirmation agreement ( _X_ Fixed Rate  ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ __50.00__ per month for __28__ months

5. Collateral, if any, securing the debt: Current market value:  $ __1371.74__
   Description:  __MISCELLANEOUS JEWELRY__

6. Does the creditor assert that the debt is nondischargeable?  ___ Yes  _X_ No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

**Debtor's Schedule I and J Entries**

7A. Total monthly income from  $ __10,151__
    Schedule I, line 12

8A. Total monthly expenses  $ __11,197.23__
    from Schedule J, line 22

9A. Total monthly payments on  $ __0.00__
    reaffirmed debts not listed on
    Schedule J

**Debtor's Income and Expenses as Stated on Reaffirmation Agreement**

7B. Monthly income from all  $ __10,151.00__
    sources after payroll deductions

8B. Monthly expenses  $ __11,197.23__

9B. Total monthly payments on  $ __0.00__
    reaffirmed debts not included in
    monthly expenses

10B. Net monthly income  $ __[-1,046.23]__
     (Subtract sum of lines 8B and 9B from
     line 7B. If total is less than zero, put the
     number in brackets.)

Printed with FinePrint trial version - purchase at www.fineprint.com

B27 (Official Form 27) (12/13)   Page 2

11. Explain with specificity any difference between the income amounts (7A and 7B):
    N/A

12. Explain with specificity any difference between the expense amounts (8A and 8B):
    N/A

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____                    _____
Signature of Debtor (only required if           Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)                     required if line 11 or 12 is completed)

**Other Information**

☑ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:
Debtors have reduced expenses.

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
___ Yes    ✓ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
___ Yes    ✓ No

**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Signature

Jennifer Pursley
Print/Type Name & Signer's Relation to Case

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A (Form B240A) (04/10)

> Check one.
> ☑ Presumption of Undue Hardship
> ☐ No Presumption of Undue Hardship
> See Debtor's Statement in Support of Reaffirmation,
> Part II below, to determine which box to check.

# UNITED STATES BANKRUPTCY COURT
Northern District of Georgia

In re  Susanne Hendrickson  ,  Case No. 14-68480  MHM
       *Debtor*

Chapter 7

## REAFFIRMATION DOCUMENTS

Name of Creditor: CAVALRY SPV I, LLC ASSIGNEE OF CAPITAL ONE - HELZBERG

☐ Check this box if Creditor is a Credit Union

**PART I. REAFFIRMATION AGREEMENT**

Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.

A. Brief description of the original agreement being reaffirmed:  Secured revolving account
*For example, auto loan*

B. *AMOUNT REAFFIRMED*:  $  1371.74

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is  0  %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)*   ☑ Fixed rate            ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A, Reaffirmation Documents

Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒  $ 50.00 per month for 28 months starting on 2/20/2015.

☐  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

_____
_____
_____

E. Describe the collateral, if any, securing the debt:

Description:        MISCELLANEOUS JEWELRY
Current Market Value    $ 1371.74

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral?    $ 1371.74

☐ No. What was the amount of the original loan?    $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 1,371.74 | $ 1371.74 |
| Annual Percentage Rate | 0 % | 0 % |
| Monthly Payment | $ _____ | $ 50.00 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

_____
_____

**PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.    ☐ Yes    ☒ No

B. Is the creditor a credit union?

Check one.    ☐ Yes    ☒ No

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A, Reaffirmation Documents                                                                 Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                  $ 10,151.00

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                              $ 10,638.38

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)  $ -487.38

   d. Amount of monthly payment required for this reaffirmed debt         $ 50.00

   *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   ☐   You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☒   You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:
   _Also, Debtors have reduced expenses_
   _____

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☐   You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A, Reaffirmation Documents                                                    Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 4/20/14    Signature _Susie Hendrickson_
                                            Debtor

Date _____    Signature _____
                                            Joint Debtor, if any

Reaffirmation Agreement Terms Accepted by Creditor:

Creditor  CAVALRY SPV I, LLC, ASSIGNEE OF CAPITAL ONE   C/O Bass & Associates, P.C., 3936 E. Ft. Lowell Ste 200, Tucson, AZ, 85712
                Print Name                                                            Address

_Jennifer Pursley_                      _[signature]_     12/30/14
Print Name of Representative              Signature         Date

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____   Signature of Debtor's Attorney_____

                       Print Name of Debtor's Attorney _____

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A, Reaffirmation Documents                                                                Page 5

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A, Reaffirmation Documents                                                                Page 6

6. When will this Reaffirmation Agreement be effective?

   a. If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and

      i. if the creditor is not a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. if the creditor is a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. What if you have questions about what a creditor can do? If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

Printed with FinePrint trial version - purchase at www.fineprint.com

B240A, Reaffirmation Documents   Page 7

## C. DEFINITIONS

1. "**Amount Reaffirmed**" means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. "**Annual Percentage Rate**" means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. "**Credit Union**" means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

Printed with FinePrint trial version - purchase at www.fineprint.com

B240B (Form B240B) (12/09)

# UNITED STATES BANKRUPTCY COURT
## Northern District of Georgia

In re Susanne Hendrickson  
      Debtor.

Case No. 14-68480

Chapter 7

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because *(provide any additional relevant reasons the court should consider)*:

Debtor has reduced expenses.

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☑ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed: _____  
(Debtor)

_____  
(Joint Debtor, if any)

Date: 12/20/14

Printed with FinePrint trial version - purchase at www.fineprint.com

11-17-'14 08:50 FROM- Bass & Associates    520-886-1546    T-147 P0012/0012 F-256

B240C (Form B240C) (12/09)

# United States Bankruptcy Court
## __Northern__ District of __Georgia__

In re: __Susanne Hendrickson__
         Debtor

Case No. __14-68480__
Chapter __7__

## ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) _____ has (have) filed a motion for approval of the reaffirmation agreement dated _____ made between the debtor(s) and creditor _____. The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____ (date).

COURT ORDER:

☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: _____

_____
*United States Bankruptcy Judge*

Printed with FinePrint trial version - purchase at www.fineprint.com

# Helzberg Diamonds Card Program

Application Type: A married person may apply for individual credit, you are applying for:
☒ JOINT CREDIT, with another person, complete entire application. ☐ INDIVIDUAL CREDIT, complete only applicant section.

STORE USE ONLY Identification Required: a valid photo ID and a second form of ID from ALL applicants.

## APPLICANT (Please Print)

- First Name: Susie
- Middle Initial: L
- Last Name: Hendrickson
- Social Security Number: [illegible] 7844
- Date of Birth: [illegible] /71
- Address: W. Main St
- City: Atlanta
- State: GA
- Zip Code: 30318
- Home Phone: (404) 799-9401
- Work Phone: (904) 254-7948
- Housing Status: ☒ Own
- Gross Monthly Income: $4,525.00
- Check if you have a: ☒ Checking Account ☐ Savings Account
- Email: susanne.hendrickson@yahoo.com
- Date of Residence: Jun / 2000
- Employment Status: ☒ Full-time ☐ Self-employed ☐ Other
- Employer Name: Atlanta Public Schools
- Employment Date: 8/08
- Monthly Housing Payment: $1,233.00

Applicant Photo ID (check one): ☒ Driver's License ☐ Military ID ☐ State ID ☐ Passport
- Photo ID #: [illegible]
- Photo ID State: GA
- Expiration Date of Photo ID: 2/19
- ID Verified by: 51407
- If the address on the applicant's ID is NOT the same as the address listed above, record the address from the ID here: Same

Applicant Second ID (check one): ☐ MasterCard ☒ Visa ☐ AMEX ☐ Discover ☐ Retail or Oil card
- Expiration Date: 8/15
- Joint Applicant Photo ID (check one): ☒ Driver's License ☐ Military ID ☐ State ID ☐ Passport
- Photo ID #: [illegible]

## JOINT APPLICANT (or spouse of applicant if married WI resident - complete name and address only)

- First Name: Kirk
- Middle Initial: W
- Last Name: Hendrickson
- Social Security Number: [illegible] 8H
- Date of Birth: [illegible]
- Address: 1 Main St NW
- City: Atlanta
- State: GA
- Zip Code: 30318
- Home Phone: (404) 799-9401
- Date of Residence: 5/2000
- Gross Monthly Income: $13,750
- Work Phone: (904) 1254-6968
- Employer Name: Novel Management Group
- Employment Date: 5/2009

Photo ID State: GA
Expiration Date of Photo ID: 7/19
If the address on the joint applicant's ID is NOT the same as address listed above, record the address from the ID here: Same

Joint Applicant Second ID (check one): ☐ MasterCard ☒ Visa ☐ AMEX ☐ Discover ☐ Retail or Oil card
- Expiration Date: 3/15

## APPLICANT(S) SIGNATURE REQUIRED BELOW

[Long paragraph of disclosure text - fine print about application terms, Capital One, N.A. as issuer of the Helzberg Diamonds Credit Card, authorization to exchange information, terms and conditions, arbitration provision, purchase money security interest, etc.]

By signing below, you hereby accept as notice in writing and consent to the collection, use and disclosure of information about you as outlined above and in the Capital One, NA, Privacy Notice, including the receipt and exchange of credit bureau and personal information about you from credit reporting agencies, credit bureaus, our affiliates and other sources.

- Applicant's Signature: [signature]
- Date (MM/DD/YY): 8/17/2012
- Joint Applicant's Signature: [signature]
- Date (MM/DD/YY): 8/17/2012

Account Number (Account numbers are 16 digits in length): 0028

- Initial Sale Amount: 3,000
- Credit Limit: 3,000
- Reference Number: 1208/9201472
- Associate 1: 51407
- Associate 2: 55484
- Associate 3: —
- Cashier: 51407
- Store Number: 35-148

6022 Helzberg EC-11 (03-12)

# HSBC
## Terms and Conditions

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **26.9%** |
| Penalty APR and When it Applies | 29.9%<br>This APR may be applied to your account if you make a late payment.<br>**How Long Will the Penalty APR Apply?:** If your APRs are increased for this reason, the Penalty APR will apply until you make the next six consecutive minimum payments when due. |
| How to Avoid Paying Interest On Purchases | Your due date is at least 23 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $2.00. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard. |

| Fees | |
|---|---|
| Annual Fee | NONE |
| Penalty Fees | |
| • Late Payment | Up to $35 |
| • Over the Credit Limit | NONE |
| • Returned Payment | Up to $25 |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)".

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in this Cardholder Agreement.

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement (including a Statutory Terminable Marital Property Classification Agreement under Sec. 766.588 Wis. Stats., or a Statutory Terminable Individual Property Classification Agreement under 766.70) adversely affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. If you are married, by submitting your credit card application you are confirming that this credit card obligation is being incurred in the interest of your marriage and your family. If the credit card for which you are applying is granted, you will notify the Bank if you have a spouse who needs to receive notification that credit has been extended to you.

## CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT

**1. GENERAL:** Each person signing and submitting, or electronically or telephonically submitting the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with HSBC Bank Nevada, N.A., a national banking association, and requests one or more credit card(s) bearing the name or tradename of Helzberg Diamonds to be used in connection with the Account. The word "Card" means any credit card(s) issued to you or an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the credit card application and the words "we", "us" and "our" refer to HSBC Bank Nevada, N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144.

If based on your creditworthiness, we determine you do not qualify for the Preferred Plus Program, you agree we may consider you for an account with the terms and conditions of the Preferred Program. If approved for the Preferred Program, you agree to its terms and conditions.

If your application is approved, "applicant" will be referred to as "primary cardholder" and "joint applicant" will be referred to as "secondary cardholder" for purposes of this agreement.

If we accept your application to open an Account, you agree that you will only purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. ACCEPTANCE OF AGREEMENT:** By a) signing and submitting, or electronically or telephonically submitting the application, using or permitting others to use the Card, b) signing or permitting others to sign sales slips; or c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement, which includes an arbitration provision.

**3. PROMISE TO PAY:** You agree to pay all amounts charged to the Account, whether incurred by you or anyone you authorize or permit to use your Account or Card. If the Account is a joint Account, the applicant and joint applicant each agree to pay and are jointly and individually responsible for all amounts charged on the Account regardless of any divorce or other legal proceedings or any agreement that may affect liability between the applicant and the joint applicant. If either of you give us notice disclaiming liability for amounts owed under this Agreement, we may close the Account. In that event, you will continue to pay the outstanding balance under the terms of this Agreement. However, you will not be able to make any new charges on the Account.

**4. ABILITY TO REPAY:** When you use the Account or permit others to use the Account, you represent that you have the ability and intention to repay all amounts charged to the Account.

**5. BILLING STATEMENT:** We will send you a billing statement monthly for each billing cycle at the end of which you have a debit or credit balance in excess of $1.00, or in which an Interest Charge has been imposed. The billing statement will show all purchases, Interest Charges and other charges or fees, including credit insurance or debt cancellation (if applicable), and all payments and other credits posted to your Account during the billing cycle. The billing statement will show the amount owed on your Account. The total Amount owed is called "New Balance" on your billing statement subject to the terms of Promotional Credit Plan purchases, if any, as indicated below.

**6. PROMOTIONAL CREDIT PLANS:** The following Promotional Credit Plans may be offered from time to time as specified prior to or at the time of purchase: a) Waived Interest Charge Credit Plan – no Interest Charges will be imposed on the purchase for a specified period, as long as the Minimum Payment Due is paid when due each billing cycle; b) Same As Cash/Monthly Payment Credit Plan – If you pay the full cash sales price of the purchase before the promotional due date, as indicated on your billing statement, and pay the Minimum Payment Due when due each billing cycle, as indicated on your billing statement, no Interest Charges will be imposed on the purchase. If such payments are not so made, Interest Charges will be imposed from the purchase date; c) Reduced Rate Credit Plan – A reduced periodic rate will be applied to the purchase for the specified period as long as the Minimum Payment Due is paid when due each billing cycle; d) Special Repayment Factor Credit Plan – A special repayment factor will be applied to the purchase for the specified period as long as the Minimum Payment Due is paid when due each billing cycle; e) Special Repayment Factor/Reduced Rate Credit Plan – A special repayment factor and a reduced periodic rate will be applied to the purchase for the specified period as long as the Minimum Payment Due is paid when due each billing cycle. All purchases that do not fall under a Promotional Credit Plan are referred to as Regular Credit Plan purchases. **Certain rules apply to the allocation of payments and interest charges on your promotional purchase if you make more than one purchase on your Card. Call 1-888-367-4310 or review the Application of Payments section of this Agreement for Information.**

**7. INTEREST CHARGES:** (a) Interest Charges are calculated separately for each Promotional Credit Plan and each Regular Credit Plan (each a "Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Interest Charge for the billing cycle is the sum of the Interest Charge for each Credit Plan, subject to the minimum Interest Charge under Section 8.

(b) Interest Charges are imposed on purchases from the transaction date until paid in full, except that no Interest Charge is imposed in a billing cycle on:

(i) a new purchase on a Regular, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the cycle;

(ii) any balance on a Regular, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the

beginning of the cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the cycle;

(iii) a purchase on a Waived Interest Charge Credit Plan for the specified promotional period;

(iv) a purchase on a Same As Cash Credit Plan if the full cash sales price is paid in full before the promotion expiration date.

(c) If an Interest Charge is imposed on a Credit Plan other than a Same As Cash Credit Plan, the amount will be determined by multiplying the applicable Daily Periodic Rate times the Daily Balance for the Credit Plan for each day in the cycle, and adding the results of those calculations together.

(d) If an Interest Charge is imposed on a Same As Cash Credit Plan during a cycle, the amount will be the sum of the following daily Interest Charge calculations for the Credit Plan during the current cycle and during each of the prior billing cycles (each a "Prior Cycle") from the transaction date of the purchase through the current cycle: (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the current cycle; and (ii) the applicable Daily Periodic Rate for each Prior Cycle times the Daily Balances of the Credit Plan for each day during each Prior Cycle.

(e) The "Daily Balance" of a Credit Plan is determined by taking the opening balance of the Credit Plan for that day, and adding 1) any new purchases made on the Credit Plan that day, 2) the previous day's Interest Charges, 3) any credit insurance premiums or debt cancellation fees (if applicable) incurred on that day and 4) any late fees, over the credit limit fees, returned payment fees or other fees incurred on that day and subtracting any payments or credits applied to the Credit Plan that day. If your Account is subject to a grace period during the billing cycle, payments made during that cycle will be subtracted from all Daily Balances in the current cycle. For any Same As Cash Credit Plan, credit insurance premiums or debt cancellation fees (if applicable) are not included in the Daily Balance of that Credit Plan during the promotional period. If a transaction for a returned payment or a dispute resolved in our favor posts after the beginning of the billing cycle, the applicable Daily Balance(s) and any related Interest Charge calculations will be adjusted retroactively to include the transaction amount as of the date of the original transaction.

(f) The Daily Periodic Rate for the Standard Rate will be .07370% (corresponding 26.9% Annual Percentage Rate). The Daily Periodic Rate for the Penalty Rate will be .08192% (corresponding 29.9% Annual Percentage Rate). Your APR may increase to the Penalty APR if we fail to receive your minimum payment with in 60 days when due. You will no longer be eligible for the Standard Rate and all existing Promotional Credit Plans will terminate, and your entire Account balance will be subject to the Penalty Rate. If your Account becomes subject to the Penalty APR, we will provide advance notice before the new Penalty APR goes into effect. If you make the next six consecutive on time minimum payments starting with your first payment due once the Penalty APR goes into effect, your rates will return to the non-penalty APR(s) applicable to your Account. If you do not make these six consecutive on time minimum payments, we may keep the Penalty APR on your Account indefinitely.

**8. MINIMUM INTEREST CHARGE:** A minimum Interest Charge of $2.00 will be assessed for each billing cycle in which an Interest Charge is payable.

**9. FEES:** We may impose on your Account the following fees, which will be added to your Account when assessed:

a) **Late Payment Fee:** A Late Payment Fee may be assessed for each billing cycle in which at least the Minimum Payment Due, including any amount past due, is not paid in time to be credited to the Account by the Payment Due Date.

The amount of the Late Payment Fee is shown in the chart below. In no event will your Late Payment Fee exceed the amount of your Minimum Payment Due.

| Outstanding Balance on Payment Due Date | Late Payment Fee - first time your payment is late. | Late Payment Fee - if another payment is late during the next 6 billing cycles. |
|---|---|---|
| Up to and including $100 | $25 | $25 |
| More than $100 | $25 | $35 |

b) **Returned Payment Fee:** A Returned Payment Fee may be assessed to the Account each time a payment check, automatic payment deduction, or other payment method is not honored or is returned unsatisfied by your bank or other financial institution. Any payment returned unsatisfied for any reason may be reposted to any type of transaction (i.e. purchases, etc.) and Interest Charges may be reinstated back to the payment date at the APR being charged for that transaction.

Your Returned Payment Fee is $25.

In no event will your Returned Payment Fee exceed the Minimum Payment Due.

c) **Research Fees:** A Research Fee may be assessed to the Account for each copy of a requested document. The amount of this fee will be disclosed at the time such copies are requested.

d) **Reissued Card Fee:** You may be charged $5 each time you request that your credit card be reissued.

e) **Payment by Phone Fee:** A Payment by Phone Fee may be assessed to the Account each time a payment is made by telephone, even if the payment is made by someone other than you. The amount of this fee will be disclosed at the time such payment is requested.

f) **Over the Credit Limit Fee:** In the event you exceed your credit limit, you will be charged an Over the Credit Limit Fee of $0.

g) **Collection Costs:** If, after you default, we refer your Account to an attorney and/or collection agency for collection, we may charge you our collection costs, including court costs and reasonable attorneys' fees, when and as permitted by applicable law.

**10. INSURANCE:** If available and you elect any credit insurance coverage, you authorize us to charge the insurance premium for such insurance to your Account on a monthly basis. You understand the amount of the insurance premium is based on the Average Daily Balances of your Account for the billing cycle in which the premium is being assessed. Credit insurance charges begin to accrue on the transaction date for all purchases made on your Account.

**11. DEBT CANCELLATION:** If available and you elect debt cancellation, you authorize us to charge the fee for such debt cancellation to your Account

on a monthly basis. You understand the amount of the debt cancellation fee is based on the Average Daily Balances of your Account for the billing cycle in which the fee is being assessed. Debt cancellation charges begin to accrue on the transaction date for all purchases made on your Account.

**12. MINIMUM PAYMENT:** You agree to pay us at least the Minimum Payment Due, reflected on your statement. If you wish, you may pay more than the Minimum Payment Due and at any time you may pay the entire amount due. To obtain your Minimum Payment Due, we add the following amounts (1+2+3):

1) Any delinquent amount you owe us from a previous cycle;
2) the greater of

a.) 4% of your "Minimum Payment Balance" (which is your "New Balance" less balances on Special Repayment Factor Credit Plans)

or

b.) 1% of your Minimum Payment Balance without the inclusion of current billed Interest Charges and current Late Fees; plus current billed Interest Charges and current Late Fees, plus the Special Repayment Factors for any Promotional Credit Plans with Special Repayment Factors, rounded to the next highest dollar.

If this amount is less than $40, we will use $40.

3) any debt cancellation fees or credit insurance premiums attributable to Promotional Credit Plans with Reduced Rate/Special Repayment Factors.

Your monthly billing statement will include requirements for you to follow in making payments including the cut-off hour for receipt of payments, which may affect crediting of your payments.

**13. PAYMENT RESTRICTIONS:** All payments must be mailed or delivered to us at the Payment Processing Center address shown on your monthly billing statement. All payments must be made by check or money order. By sending us a check for payment on your account, you authorize us either to use information from your check to initiate an electronic fund transfer from your account according to the terms of the check or to process this transaction as a check. When we use your check to make an electronic fund transfer, funds may be withdrawn from your account the same day we receive your payment, and you will not receive your check back from your bank. If you do not want your checks to be converted to an electronic fund transfer, please call Customer Service. You may not mail us cash. You agree that any payment may be returned to you if your check is: (a) not drawn in U.S. dollars on funds on deposit in the U.S.; (b) missing a signature; (c) drawn with different numeric and written amounts; (d) restrictively endorsed; (e) postdated; (f) drawn on a credit account issued by HSBC Bank Nevada, N.A. or an affiliate; (g) not paid on presentment. However, **if you wish us to consider a payment marked "paid in full", "without recourse", or similar language, such payment must be marked for special handling and sent to HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521.** You agree that we may accept any such payment, late payments, partial payments, and payments marked "paid in full", "without recourse", or otherwise restrictively endorsed without waiving our right to payment in full of your entire Account balance.

**14. APPLICATION OF PAYMENTS:** Your payments are applied in a manner we determine in accordance with applicable law. We apply the amount of your payment equal to the Minimum Payment Due at our discretion and generally to the Minimum Payment Due calculated on each credit plan. We apply any payment in excess of the Minimum Payment Due on your account to higher APR balances before lower APR balances. **If you have a Same As Cash Credit Plan(s), we will automatically apply payments received during the final two complete billing cycles and up to the date of expiration first to the required Minimum Payment Due and next to the plan(s) that is expiring, in the order of expiration; at other times, we will treat your Same As Cash Credit Plan as having a 0% APR for purposes of determining payment application.**

**15. CREDIT LIMIT:** You agree not to let the Account balance exceed the credit limit established for you by us from time to time. We do not have to honor any use of your Card or honor credit card checks which would cause you to exceed your credit limit, but if we do, you agree to repay the amount by which your credit limit is exceeded, plus Interest Charges immediately.

**16. CREDIT AUTHORIZATIONS:** Some purchases will require our prior authorization and you may be asked by the merchant to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen. We are not responsible for the refusal of any merchant to accept or honor the Card or a credit card check.

**17. SECURITY:** Except as indicated below, you grant us a purchase money security interest in the goods purchased with your Card and in all insurance contracts and all proceeds, returned premiums, mechanical failure and extended service contracts, and refunds of charges for mechanical failure and extended service contracts financed therewith. Each good purchased on your Account will secure the entire Account balance until such good is paid in full. For purposes of determining which goods are subject to a security interest, payments received will be deemed to be applied first to any unpaid insurance premiums or debt cancellation fees (if applicable), Interest Charges and fees and then to pay for purchases on the Account in the order in which they were made. When sufficient payments are made to repay the portion of the Account balance attributable to the purchase of a particular good, we will release our purchase money security interest in that good. Goods covered by a security interest may be taken from you if you do not pay on time. We may require you to make them available at a convenient place of our choice. We take no security interest in goods where the original purchase price is less than $200 if you live in New York and in goods where the original purchase price is less than $700 if you live in Maryland. If we repossess any goods purchased with your Card, we may charge you our repossession cost including, but not limited to, necessary repairs, storage fees and costs of sale, when and as permitted by law.

**18. DEFAULT:** You will be in default under this Agreement upon: (a) your failure to make at least the Total Minimum Payment Due when due; (b) your violation of any other provision of this Agreement; (c) your death; (d) your becoming the subject of bankruptcy or insolvency proceedings; (e) your becoming the subject of attachment, foreclosure, repossession, lien, judgement or garnishment proceedings; (f) your supplying us with misleading, false, incomplete or incorrect information; (g) our receipt of information that you are unable or unwilling to perform the terms or conditions of this Agreement; (h) your failure to supply us with any

information we reasonably deem necessary; (i) our receipt of information from third parties, including credit reporting agencies, which indicates a delinquency or charge-off with other creditors; (j) your default under any other loan or agreement you have with us or any of our affiliates; (k) your moving out of the U.S. or Canada or providing us with a non-U.S. or non-Canadian mailing address; (l) your becoming incompetent; (m) your exceeding your credit limit; (n) your payment being returned unpaid by your bank for any reason; (o) any credit card check being returned unpaid by us; or (p) your being in default under any other agreement or security agreement you have with us or with one of our affiliates.

Upon default, we have the right to (a) terminate your credit privileges under this Agreement, (b) terminate any Promotional Credit Plans and convert balances to a Regular Credit Plan, (c) require you to pay your entire Account balance including Promotional Credit Plan balances, all accrued but unpaid Interest Charges and other charges provided for in this Agreement immediately and (d) bring an action to collect all amounts owed.

## 19. ARBITRATION:

### Federal Arbitration Act

This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law upon written request as set forth in the applicable arbitration association procedures. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. Judgment upon the award may be entered in any court having jurisdiction.

### Claims and Arbitration Administrators

This arbitration provision shall apply to any Claim (defined below) by or against us, or you or any other Covered Person (defined below). You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether preexisting, present or future), including initial claims, counterclaims, cross-claims and third party claims, arising from or relating to (a) this Agreement, the application, your Account, any transaction or activity involving any payment or failure to make payment on your Account, or any solicitation, advertisement, promotion, or oral or written statements related to this Agreement or your Account, (b) the relationships which result from this Agreement and your relationship with any Covered Person pursuant to the criteria in the immediately preceding subsection or (c) the scope, validity or enforceability of this arbitration clause, any part thereof or the entire Agreement (any of the forgoing a "Claim"), shall be resolved, upon the election of you, us, or any other Covered Person described below, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator (the "Administrator") selected at the time the Claim is filed or received by a party to the Claim. The party initiating the arbitration proceeding shall have the right to select one of the following Administrators: Judicial Arbitration & Mediation Services, Inc. ("JAMS") or the American Arbitration Association ("AAA"). The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge.

The rules and forms of JAMS and AAA may be obtained by writing to these organizations at the addresses listed under Further Information below. Our address for service of process under this provision is HSBC Bank Nevada, N.A., P.O. Box 98740, Las Vegas, NV 89193-8740.

### Small Claims Exemption

We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. However, if that Claim is transferred or appealed to a different court, we reserve our right to elect arbitration at such time.

### Location of Arbitration and Fees

Any participatory arbitration hearing that you attend will take place in a location that is reasonably convenient to you. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the Administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the Administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the Administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the Administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any fees we have previously paid to the Administrator or for which we are responsible.

### Covered Persons

This arbitration provision covers Claims by or against (a) us, any corporate parent, subsidiary, or affiliate, any predecessor or successor of the foregoing, and any officer, director, employee, agent or representative of any of the aforementioned, (b) you and any authorized user, and any other person claiming through you or any authorized user, and (c) any other person assisting us in offering Cards, administering Accounts or providing Card related benefits or services ("Covered Persons"). If a Claim that is within the scope of the first paragraph of the "Claims and Arbitration Administrators" paragraph above is advanced by or against any third person, and any of the persons mentioned in the previous sentence is involved as a party, then the entire Claim is subject to arbitration under this Agreement, including any Claim by or against any third person.

### Protection of Information

The rules and procedures of the Administrator, which you may obtain from that organization, shall govern the arbitration unless they conflict with this arbitration provision, in which case this arbitration provision will control. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, nor to state or local laws that relate to arbitration proceedings. If you or we request, the arbitrator will honor claims of privilege recognized under applicable law and will use best efforts to protect confidential information (including through use of protective orders).

### Parties to Arbitration

Arbitration shall be conducted in the name of individually named parties. Unless all parties consent, neither you nor we may join, consolidate, or otherwise bring claims regarding two or more accounts, individuals, or account holders in the same arbitration, other than Covered Persons, joint applicants or authorized users of an account. There shall be no class actions, private attorney general actions, or other representative or collective actions, in an arbitration, even if the underlying dispute has been asserted in a court as a class action, private attorney general action, or other representative or collective action. No party may advance a Claim in arbitration on behalf of or against a person in a representative or collective capacity, or on behalf of or against a person who is not an individually named party to the arbitration; nor may a party seek an award or benefit in arbitration on behalf of or against a person who is not an individually named party. The arbitrator shall not have authority to resolve any claim advanced by or on behalf of anyone who is not an individually named party, and shall not have the authority to make an award for the benefit of, or against, anyone who is not an individually named party. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the express written consent of you and us. These limitations are hereafter referred to as the "Class Action Waiver." The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this arbitration provision. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. You and we acknowledge and agree that under no circumstances will a class action be arbitrated.

### Decision and Appeal

The arbitrator shall resolve all Claims, including the applicability of this arbitration provision or the validity of the entire Agreement, except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court. The arbitrator's decision will be final and binding unless you or we seek an appeal of the award by making a written request to the Administrator within the timeframe specified in the Administrator's rules. In the event of such an appeal, an appeal panel consisting of three arbitrators will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration, and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as provided under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

### Consequences of Electing Arbitration

**THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE**

PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

**Further Information**

You may contact, obtain the arbitration rules of, or file a Claim with JAMS or AAA as follows:

Judicial Arbitration & Mediation Services, Inc.
620 Eighth Ave., 34th Floor
New York, NY 10018
www.jamsadr.com

American Arbitration Association
1633 Broadway, Floor 10
New York, NY 10019
www.adr.org

**Miscellaneous**

This arbitration provision shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. In the event of a conflict or inconsistency between the rules and procedures of the Administrator and this arbitration provision, this arbitration provision shall govern.

**Opt Out of Arbitration**

You may reject this arbitration provision without penalty. To do so, you must send HSBC, c/o HSBC Bank Nevada, N.A., P.O Box 98740, Las Vegas, NV 89193-8740 a signed writing ("Rejection Notice") that is received within thirty (30) days after the date you sign the application. The Rejection Notice must identify the transaction involved and must include your name, address, and social security number and must be signed by all persons contractually obligated on your account. You may send the Rejection Notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to reject the arbitration provision. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf.

**20. CHANGE OF TERMS:** We may change or terminate any terms, conditions, services or features of your Account or this Agreement (including increasing your Interest Charges) at any time. We may also add new terms, conditions, services or features to your Account or this Agreement. We may impose any change in terms or any new terms on your outstanding balance as well as on subsequent transactions and balances. To the extent required by law, we will notify you in advance of any change in terms or any new terms by mailing a notice to you at your address as shown on our records. A change in the Annual Percentage Rate, pursuant to the variable rate provisions of this Agreement, shall not be considered a change in terms under this paragraph.

**21. LIABILITY FOR UNAUTHORIZED USE:** You may be liable for the unauthorized use of your Card. You agree to notify us immediately upon learning of the possible unauthorized use of your Card. You will not be liable for unauthorized use that occurs after you notify us verbally or in writing. You may notify us in writing at HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521 of the loss, theft, or possible unauthorized use of your Card. In any case, your liability will not exceed $50. However, unauthorized use does not include use by a person to whom you have given authority to use the Card, and you will be liable for all use by such a person. To terminate this authority, you must retrieve the Card from the previously authorized user and return it to us at HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521, along with a letter explaining why you are doing so.

**22. LOST OR STOLEN CARD:** You agree to notify us immediately if your Card is lost or stolen, or if you think someone is using your Account without your permission. You may notify us by writing us at HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521.

**23. LOST OR STOLEN CREDIT CARD CHECKS:** You agree to notify us immediately if any credit card checks are lost or stolen. You may notify us by writing us at HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521.

**24. STOP PAYMENT:** If before a credit card check drawn on your Account has been honored, you notify us not to pay it, we will stop payment on the credit card check. You must send a written and signed stop payment order which states the number, payee, amount and date of the credit card check on which payment is to be stopped. If you call, you must confirm the call in writing within 14 days. A written stop payment will remain in effect for six months, unless renewed in writing.

**25. CARD CANCELLATION:** We can terminate or reduce your credit limit at any time and for any reason subject to the requirements of applicable law. Balances outstanding under this Agreement when your credit limit is reduced or terminated will continue to accrue Interest Charges until paid in full and are subject to all terms and conditions of this Agreement. You agree to return your Card(s) to us at any time we request.

**26. CLOSING YOUR ACCOUNT:** You can cancel or close your Account by writing to us at HSBC Retail Services, P.O. Box 15521, Wilmington, DE 19850-5521. Your notice becomes effective when we receive it. If you cancel or close your Account, you will still be responsible for all amounts owed us according to the terms of this Agreement. You agree to return your Card(s) to us.

**27. MONITORING PRACTICES:** You agree that our supervisory personnel may listen to and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardholders.

**28. APPLICABLE LAW:** This Agreement and your Account shall be governed by, and interpreted under, federal law, including the Federal Arbitration Act, and the laws of the State of Nevada applicable to contracts made and to be performed therein without reference to principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Nevada. We make decisions about granting credit to you from, and extend credit to you under this Agreement from, Nevada. Federal and Nevada law shall also apply to any controversy, claim or dispute arising from or relating in any way to the subject matter of this Agreement and/or your Account, including statutory, equitable and tort claims.

**29. CREDIT INVESTIGATION AND REPORTING:** You agree that we may investigate your credit, employment and income records and verify your credit references and also may report to credit reporting agencies, merchants, and other creditors the status and payment history of your Account.

**30. DISPUTED ACCURACY OF CREDIT REPORT:** If any specific information related to your Account, transactions or credit experience with us is inaccurate, you may notify us and request us to correct the inaccurate information (after confirmation of the alleged error) reported to any credit

reporting agency by writing to us at HSBC Retail Services, P.O. Box 5253 Carol Stream, IL 60197-5253.

**31. UPDATED FINANCIAL INFORMATION:** Upon request, you agree to promptly give us accurate updated financial information about yourself.

**32. DELAY TAKING ACTION:** We will not lose any of our rights under this Agreement if we delay taking action for any reason. To the extent allowed by law, we may take other action not described in this Agreement, and by doing so will not lose our rights under this Agreement.

**33. CHANGE OF NAME, ADDRESS, OR EMPLOYMENT:** You agree to give us 10 days advance notice of any change in your name, mailing address, telephone number, or place of employment. You agree the Department of Motor Vehicles may release your residence address to us should it become necessary to locate you.

**34. ASSIGNMENT OF ACCOUNT:** We may sell, assign, or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account.

**35. SEVERABILITY:** If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule or regulation, all other provisions of this Agreement will remain valid and enforceable.

**36. NOTICE FOR CALIFORNIA RESIDENTS:** California law requires that we inform customers that should they fail to fulfill the terms of their credit obligation, a negative report reflecting on their credit record may be submitted to a credit reporting agency. If you are married, you may apply for credit in your own name.

**37. NOTICE FOR FLORIDA RESIDENTS:** You (borrower) agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.

**38. NOTICE FOR MAINE RESIDENTS:** We may request a consumer report in connection with your application for credit. You may ask whether a consumer report was obtained by us and we will tell you the name and address of the consumer reporting agency, if a report was obtained.

**39. NOTICE FOR NEW YORK RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report. New York residents may contact the New York state banking department to obtain a comparative listing of credit card rates, fees and grace periods. New York State Banking Department: 1-800-522-3330.

**40. NOTICE FOR OHIO RESIDENTS:** The Ohio Laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**41. NOTICE FOR VERMONT RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

---

**The information about the costs of the Card described in this Cardholder Agreement and Disclosure Statement is accurate as of October, 2010. This information may have changed after that date. To find out what may have changed write to us at 1111 Town Center Drive, Las Vegas, Nevada 89144.**

## YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including interest charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any interest charges related to any questioned amount. If we didn't make a mistake, you may have to pay interest charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

AG3074 (10/10) CI